**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

In re:

MADHU GROVER,

Debtor.

Chapter 7
Case No. 22-11730 (MG)

---

YANN GERON, as Chapter 7 Trustee of the
Estate of MADHU GROVER,

Plaintiff,

-against-

MADHU GROVER,

Defendant.

Adv. Proc. No. 23-01198 (MG)

---

JAMES BUSCHE,

Plaintiff,

-against-

MADHU GROVER,

Defendant.

Adv. Proc. No. 23-01199 (MG)

---

PRASANNA PANDARINATHAN,

Plaintiff,

-against-

MADHU GROVER,

Defendant.

Adv. Proc. No. 23-01200 (MG)

---

**MEMORANDUM OPINION AND ORDER DENYING THE DEBTOR A DISCHARGE**

*A P P E A R A N C E S:*

GERON LEGAL ADVISORS LLC
*Attorney for Chapter 7 Trustee/Plaintiff Yann Geron,*
370 Lexington Avenue, Suite 1208
New York, New York 10017

By:    Yann Geron, Esq.
       Nicole N. Santucci, Esq.

BRADSHAW LAW GROUP P.C.
*Attorneys for Plaintiff/Creditor James Busche,*
307 East 89th Street; Suite 4C
New York, New York 10128
By:    Diane Bradshaw, Esq.

LAW OFFICES OF MARK SILVER, PLLC
*Attorneys for Plaintiff/Creditor Prasanna Pandarinathan,*
123 7th Avenue, #113
Brooklyn, New York 11215
By:    Mark S. Silver, Esq.

WEINGBERG ZAREH MALKIN PRICE LLP
*Attorney for Debtor/Defendant*
45 Rockefeller Plaza, 20th Floor
New York, New York 10111
By:    Omid Zareh, Esq.
       Adrienne Woods, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the issue of denial of discharge in *In re Madhu Grover*, Case

No. 22-11730 and the jointly administered adversary proceedings brought by Yann Geron as

Chapter 7 trustee (the "Trustee") of the estate of Madhu Grover (the "Debtor" or "Defendant"),

James Busche ("Busche"), and Prasanna Pandarinathan ("Pandarinathan") (collectively, the

"Plaintiffs" and each a "Plaintiff").  A trial on the denial of discharge claims under section 727

was held November 3, 2025, through November 5, 2025.  This opinion contains the Court's

findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052.

For the reasons explained below, the Court **DENIES** the Debtor a discharge under 11 U.S.C. §§ 727(a)(2)(A), 727(a)(4)(A) and 727(a)(4)(D); the Court declines to deny a discharge under §§ 727(a)(3) and 727(a)(12).[1]

## I.   BACKGROUND

### A.  The Bankruptcy Case and Associated Litigation

On December 31, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  (Chapter 7 Voluntary Petition for Individuals, Case No. 22-11730, the "Petition," ECF Doc. #1.)  Schedule E/F discloses that creditor James Busche has an unsecured claim based on a New York state court judgment against the Debtor in the amount of $2,664,280.75.  (*See* Amended Schedule E/F, ECF Doc. # 11.)  On November 15, 2023, each Plaintiff filed complaints against the Debtor seeking to deny her a discharge pursuant to section 727 of Title 11 of the United States Code.  (Pre-Trial Order, Case No. 22-11730, the "PTO," ECF Doc. # 121; Complaint of Chapter 7 Trustee Seeking a Judgement Denying the Debtor's Discharge Pursuant to 11 U.S.C. Section 727(a), Case No. 23-01198, the "Trustee Complaint," ECF Doc. # 1; Complaint against Madhu Grover Objecting to Discharge of Debt And Dischargeability of Debtor, Case No. 23-01199, the "Busche Complaint," ECF Doc. # 1; Complaint against Madhu Grover, Case No. 23-01200, the "Pandarinathan Complaint," ECF Doc. # 6.)  The Debtor filed an answer to the Trustee Complaint on December 17, 2023 (Amended Answer to Complaint, Case No. 23-01198, the "Trustee Answer," ECF Doc. # 4.)  On January 17, 2024, the Debtor additionally filed answers to the Busche Complaint (Answer to

---

[1]      The complaints filed by plaintiffs Busche and Pandarinathan, in addition to section 727 claims, include causes of action to deny the Debtor a discharge of specific debts under section 523 of the Bankruptcy Code.  The Court bifurcated the section 523 claims from the trial of the section 727 denial of discharge claims.  The trial proceeded only as to the section 727 claims.  In light of the results discussed in this Opinion, denying the Debtor a discharge under multiple subsections of section 727, it is unnecessary to conduct a trial with respect to the section 523 claims.

Complaint, Case No. 23-01199, the "Busche Answer," ECF Doc. # 8) and to the Pandarinathan

Complaint (Answer to Complaint, Case No. 23-01200, the "Pandarinathan Answer," ECF Doc. #

6.)

**B. Trial**

Trial on the denial of discharge was held November 3, 2025, through November 5, 2025.

Trial focused principally on the following misrepresentations by the Debtor: (i) the Purported

Bank Statement provided to the Trustee; (ii) the failure to disclose the prepetition $95,000

deposit for the purchase of the Co-op; (iii) the failure to disclose the prepetition $45,000

Settlement Payment received by the Debtor; (iv) the failure to disclose the $20,000 Manish

Grover Payment received by the Debtor; and (v) the Schedule and SOFA omissions.[2]

1. <u>The Chase Bank Statement versus Purported Bank Statement</u>

On October 26, 2012, the Debtor opened her personal JP Morgan Chase Bank ("Chase

Bank") account ending in x6350 (the "Chase Account"). (PTO at 4.) In June 2016, the Debtor's

adult daughter, Ashna Shah Grover, was added to the Chase Account as a joint holder. (*Id.*)

In response to the Trustee's request for documents including statements from the Chase

Account through the Petition Date, on February 27, 2023, the Debtor, through her counsel,

Adrienne Woods, Esq. ("Ms. Woods"), provided the Trustee with a purported copy of a bank

statement for the Chase Account for the period December 28, 2022, through January 27, 2023

(the "Purported Bank Statement," Ex. PX 21). (PTO at 6.) The Purported Bank Statement

contained the following alterations made by the Debtor: (i) changes to the font of the bank

statement (excluding the Chase header, period, account number header, and bar code number);

(ii) an increase of the ending balance by $30,000; (iii) changes to the dates of two deposits from

---

[2]      All capitalized terms not otherwise defined are defined *infra*.

4

Infosys Limited from December 30, 2022 (pre-petition) to January 3, 2023 (post-petition); and (iv) a decrease in the amount of check no. 3640 dated January 12, 2023 from $40,000 to $10,000. (Exs. PX21, PX13.)  The Debtor admits that she made the changes to the original bank statement (the "Chase Bank Statement," Ex. PX 13).  (Trial Recording at 0:36:46, *In re Grover Madhu Grover*, Nos. 22-11730, 23-01198, 23-01199, 23-01200 (Bankr. S.D.N.Y. Nov. 4, 2025).

At trial, the Debtor testified that in February 2023 she sent the Purported Bank Statement to her attorney, which was then forwarded to the Trustee in response to his request.  (Trial Recording at 25:15.)  The Debtor testified that she altered the document, but she claims she mistakenly sent the modified version.  (*Id.* at 0:20:56; 0:36:46).  The Debtor co-owned and operated ASMG Consulting.  She claims that she made changes to the document as part of job-related research into modifying locked documents without any intent to share with the Trustee. (*Id.* at 0:16:24).  The Debtor described herself as a "data person" who modifies documents for clients.  (*Id.* at 0:25:20.)

The Debtor testified that in late January or early February of 2023, she asked a software contractor in India to show her how to alter a locked PDF using code in Adobe Acrobat because she did not have an Adobe license that would enable her to alter locked documents.  (Trial Recording at 0:16:24; 0:24:33.)  During this editing practice, the Debtor made the changes to the Purported Bank Statement.  (*Id.* at 0:36:46.)  The Debtor testified that she thought she had provided the unaltered bank statement to the Trustee and was not aware that she had submitted the Purported Bank Statement until the Trustee questioned her about it during her Rule 2004 examination on August 7, 2023.  (*Id.* at 0:20:56.)  As background, the Debtor has two master's degrees—a master's degree in finance from NYU, and another master's degree in data science. (*Id.* at 1:49:31.)

The Debtor was unable to provide the name of the contractor who helped her, noting that it could have been any of the three or four software contractors she traditionally worked with, although she did not provide *any* of the contractors' names.  (Trial Recording at 0:24:18; 0:37:15.)  When the Trustee asked the Debtor whether she has modified other documents on her computer, the Debtor responded, "I do that for a living."  (*Id.* at 0:25:25.)  The Debtor denied modifying any other documents submitted to the Court.  (*Id.* at 0:25:50.)

The Debtor provided the Chase Bank Statement on April 23, 2023.  (PTO at 6.)  The Trustee noted that the Debtor provided the Chase Bank Statement ten days after the Trustee subpoenaed the Chase Account Statements from Chase.  (Trial Recording at 0:39:07.)

### 2.  The Co-op Deposit

The Debtor *and* her non-debtor husband, Manish Shah, entered a contract of sale on September 1, 2022, to purchase a co-operative apartment, Unit 4G, (the "Co-op") located at 440 East 56th Street, New York, New York for $950,000.  (PTO at 9.)  The contract provides that the buyers shall make a $95,000 deposit in order to purchase the Co-op.  (Ex. PX7.)  A $95,000 deposit was wired from the Debtor's Chase Account to Chaves Perlowitz Luftig LLP ("Chaves Perlowitz") on August 30, 2022.  The Debtor did not disclose the existence of the contract of sale or of the deposit in the Petition or in her schedules until the Trustee's Rule 2004 Subpoena. (PTO at 20.)  The contract contained a mortgage contingency that would have allowed the Debtor and her husband to cancel the contract and recover the $95,000 deposit if they were unable to obtain the mortgage.  (Ex. PX7.)  The Debtor testified that because of her bankruptcy filing, she was unable to get a mortgage.  Manish Shah alone closed on the Co-op and took title in his name but applied the $95,000 deposit to the purchase price despite the deposit originating from the Debtor's Chase Account.

At trial, the Debtor claimed that the $95,000 down payment was drawn on her Chase

Account but was not made on her personal behalf.  (Trial Recording at 3:06:50.)  The Debtor

testified that the payment was made using ASMG funds that were commingled in the Chase

Account.  She testified that she made the down payment deposit at the direction of her husband,

Manish Shah, as a portion of the repayment of promissory notes that the Debtor signed in favor

of Manish Shah (the "Promissory Notes").[3]  (*Id.*)  The Promissory Notes are two loan

agreements made between Manish Shah and ASMG where Manish Shah agreed to lend a total of

$400,000 to ASMG.  (Exs. PX2, PX3.)  The first promissory note was made on December 11,

2020 for $300,000 (Ex. PX2) and the second note was made on April 13, 2021 for $100,000 (Ex.

PX3).  The Debtor agreed that she would be personally liable for each note if ASMG failed to

pay the notes when due.  (Exs. PX2, PX3.)  At trial, Plaintiffs noted that the Debtor did not have

enough funds in the Chase Account to cover the Co-op deposit until the Debtor received the

$45,000 Settlement Payment that was paid to her personally (discussed *infra* at 8).

---

[3]      The Chase account was in the names of the Debtor and her daughter Ashna Shah-Grover, not Manish Shah.
(PTO at 4.)  The Debtor testified at trial that ASMG was jointly owned by the Debtor and Ashna Shah-Grover, 50%
each.  She offered no documentary evidence to support this assertion regarding ASMG ownership.  If the Court were
to credit Debtor's testimony (which the Court does not) that the payment was made as a partial repayment of
amounts Debtor owed to her husband Manish Shah, the Payment on behalf of Manish Shah was likely an avoidable
preference (since it was a payment to an insider made within one year of the filing of the petition (*see* section
547(b)(4)(B)) to satisfy an unsecured claim of Manish Shah at a time that she was insolvent).

### 3.  Settlement Agreement

Bharat Sahgal and Madhu Grover entered a Memorandum of Understanding on December 13, 2016, relating to the occupancy by Madhu Grover and Ashna Shah-Grover of unit 4F (the "Apartment") located at 455 East 51st Street, New York, NY 10022.  (PTO at 8.)  On July 27, 2022, Sahgal, Grover, and Shah-Grover entered a settlement agreement (the "Settlement Agreement," Ex. DXD) providing that Grover and Shah-Grover would vacate the Apartment in exchange for $45,000.  (Ex. DXD; PTO at 9.)  Grover and Shah-Grover signed the Settlement Agreement.  (Ex. DXD.)  On August 26, 2022, Sahgal wired $45,000 (the "Settlement Payment") to the Chase Account.  (PTO at 9.)  The Debtor did not disclose the Settlement Payment in her SOFA or Schedules.

### 4.  Manish Grover Payment

On July 27, 2022, the Debtor provided a check for $20,000 drawn on her Chase Account to her brother, Manish Grover (the "Manish Grover Payment").  (PTO at 7.)  The Manish Grover Payment was not disclosed by the Debtor in her SOFA or Schedules.

The Debtor testified that the Manish Grover Payment was a repayment on ASMG's behalf to Manish Grover for cash payments he made to contractors who did data analytics work for ASMG.  (Trial Recording at 1:25:41.)  The Debtor testified that Manish Grover, living in India, had personally paid the contractors in cash to give ASMG a cheaper rate.  (*Id.* at 1:25:16.) The Debtor did not provide the names of any of the purported contractors.  The Debtor also testified that she endorsed and deposited the check at a Citibank located at 78th St. and 3rd Ave. in Manhattan on Manish Grover's behalf as he was abroad at the time.  (*Id.* at 1:23:51.)  No documents supporting the existence of ASMG's alleged obligation, or the payments by Manish Grover, were provided by the Debtor.

8

5.  <u>SOFA and Schedule Omissions</u>

On January 17, 2023, the Debtor filed an amended voluntary petition.  On that same date,

the Debtor filed her bankruptcy schedules (the "Schedules," Case No. 22-11730, ECF Doc. # 9)

and Statement of Financial Affairs (the "SOFA," Case No. 22-1170, ECF Doc. # 9) and verified

the contents of the Schedules and SOFA under penalty of perjury.  (PTO at 6.)  On February 3,

2023, the Debtor filed amended bankruptcy schedules E/F (the "Amended Schedules") and

verified that the amended list of creditors was true and correct.  (PTO at 6; Exs. DXS; DXT.)

The Trustee alleges that the Debtor, *inter alia*, made the following false statements or

omissions in connection with her bankruptcy case:

1.  The Debtor failed to disclose her loan obligations to Manish Shah and/or Diamond
    Deal, totaling approximately $300,000, on Schedule E/F or Amended Schedule E/F.
2.  The Debtor failed to disclose her 2022 income in response to SOFA question 4.
3.  The Debtor failed to disclose a $45,000 payment that she received from Bradshaw Law
    Group in response to SOFA question 5.
4.  The Debtor failed to disclose a $20,000 payment to her brother, Manish Grover, in
    response to SOFA question 7.
5.  The Debtor failed to disclose a $95,000 payment allegedly made on behalf of Manish
    Shah and/or Diamond Deal in response to SOFA question 7.
6.  The Debtor listed an incorrect address for Grover Partners on Schedule H.
7.  The Debtor listed an incorrect address for ASMG on Schedule I.

(PTO at 20-21.)

The Debtor took the following positions about the alleged false statements or omissions

on her Schedules, SOFA, and Amended Schedules:

1.  The unsupported assertion that Debtor failed to disclose her joint loan
    obligations to Manish Shah and Diamond Deal, totaling approximately
    $300,000, on Schedule E/F or Amended Schedule E/F.

    a.  This was a loan to ASMG and not to herself, as evidenced by the use of
        the funds and the fact that any and all repayments were made from funds
        of ASMG and not her own.

2.  The Debtor's failure to disclose her 2022 income.

    a. During trial, the Debtor noted that she did not include her income as she did not know it "to the last penny" at time of filing. (Trial Recording at 1:32:52.)

3. The Debtor's purported failure to disclose the $45,000 payment received pursuant to the Settlement Agreement in response to SOFA question 5.

    a. The Debtor did not receive the entire $45,000, as her daughter was also a party to the Settlement Agreement.

    b. Moreover, Debtor never viewed these funds as income and did not think to report them, as the funds were used to pay for expenses related to the lawsuit including her lawyer in the underlying action, relocation expenses, and a paltry $5,000 that was paid to Manish Shah in exchange for six (6) months room and board as she had nowhere to live.

4. The false allegation that Debtor failed to disclose the Manish Grover Payment in response to SOFA question 7.

    a. This was a payment by ASMG, using ASMG funds, for an ASMG debt.

    b. While the funds were taken from the Chase Bank Account, it was paid exclusively from ASMG funds.

5. The false allegation that Debtor failed to disclose the Co-op deposit in response to SOFA question 7.

    a. This was a payment from her Chase Bank Account by ASMG for an ASMG debt. While the funds were taken from the Chase Bank Account, it was paid exclusively from ASMG funds.

6. The falsehood that Debtor listed an incorrect address for Grover Partners on Schedule H.

    a. Grover Partners has not been active since 2018 and the Debtor provided the last address on record, that of its counsel.

    b. Furthermore, Debtor had no reason to misrepresent this address.

7. The falsehood that Debtor listed an incorrect address for ASMG on Schedule I.

    a. The Debtor supplied the last active address at the time the Petition was filed.

(PTO at 35-37.)

# II. <u>LEGAL STANDARD</u>

A.  <u>Section 727(a)(2)(A)</u>

Section 727(a)(2)(A) is intended to "prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets." 6 COLLIER ON BANKR. ¶ 727.02[1] (16th ed. 2024).  Section 727(a)(2)(A) of the Bankruptcy Code provides that a Court shall deny discharge if:

> [T]he debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition . . . .

11 U.S.C. § 727(a)(2)(A).

The party seeking to deny a debtor's discharge has the burden of proving that denial of discharge is warranted by the preponderance of evidence.  *In re Boyer*, 328 Fed. App'x. 711, 714 (2d Cir. 2009).  If the challenging party meets its burden, then the burden shifts to the debtor "to provide a satisfactory explanation for his actions."  *Flushing Savings Bank v. Vidro (In re Vidro)*, 497 B.R. 678, 686 (Bankr. E.D.N.Y. 2013) (quoting *New World Restaurant Group, Inc. v. Abramov (In re Abramov)*, 329 B.R. 125, 130 (Bankr. E.D.N.Y. 2005)).

B.  <u>Section 727(a)(3)</u>

The Plaintiffs also seek a denial of discharge under section 727(a)(3), which provides that discharge may be denied where:

> [T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .

11

11 U.S.C. § 727(a)(3).

"The purpose and intent of [§ 727(a)(3)] of the Bankruptcy Act is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006) (quoting *In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1936)) (modifications in original). It is, in essence, a "record-keeping requirement." *In re Cacioli*, 463 F.3d 229 at 235. A denial of discharge under section 727(a)(3) requires proof of (1) failure by the debtor to keep or preserve any recorded information, including books, documents, records and papers, *or* (2) an act of destruction, mutilation, falsification or concealment of any recorded information including books, documents, records and papers by the debtor or someone acting for the debtor (3) *and* that by failing to keep such books or records, or by destroying or concealing such records, it is impossible to ascertain the financial condition and material business transactions of the debtor. *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 665 (Bankr. S.D.N.Y. 2008).

C. Section 727(a)(4)(A)

Section 727(a)(4)(A) denies discharge if a debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To show cause under this subsection, five elements must be proven: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Boyer*, 328 Fed. App'x. at 715 (citing *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir.2000)).

D.  <u>Section 727(a)(4)(D)</u>

Section 727(a)(4)(D) denies discharge if a debtor "knowingly and fraudulently, in or in connection with the case withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4)(A); *Ramsay v. Jones (In re Jones)*, 175 B.R. 994, 997 (Bankr. E.D. Ark. 1994).  This means that in the latter case the act could be done before the filing of a case under title 11 and be a violation that would bar a discharge.  6 COLLIER ON BANKR. ¶ 727.07 (16th ed. 2024).  Courts have found that requisite intent in cases when the debtor's conduct was evasive or persistently uncooperative, or when the debtor withheld records after numerous requests, or failed to explain the failure to comply with the order to produce documents.  *Rupp v. Desousa (In re Desousa)*, 2015 Bankr. LEXIS 349, at * 7 (Bankr. D. Utah Feb. 4, 2015) (citing *In re Gardner*, 384 B.R. at 668).  By contrast, the requisite intent has not been found when the records were not available to the debtor through no fault of his or her own.  *Id.*

E.  <u>Section 727(a)(12)(A)</u>

Section 727(a)(12)(A) provides in relevant part:

> (a)  the court shall grant a discharge to the debtor unless—
>
> . . . .
>
> (12)  the court after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge finds that there is reasonable cause to believe that—
>
>> (A) section 522(q)(1) may be applicable to the debtor; *and*
>>
>> (B) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).

11 U.S.C. § 727(a)(12) (emphasis added).

13

In turn, section 522(q)(1) of the Code provides that

> (q)(1) As a result of electing under subsection (b)(3)(A) to exempt
> property ***under State or local law***, a debtor may not exempt any
> amount of an interest in property described in subparagraphs (A),
> (B), (C) and (D) of subsection (p)(1) which exceeds in the aggregate
> $125,000 if–
>
>> (A) the court determines, after notice and a hearing, that the
>> debtor has been convicted of a felony (as defined in section
>> 3156 of title 18), which under the circumstances,
>> demonstrates that the filing of the case was an abuse of the
>> provisions of this title; or
>>
>> (B) the debtor owes a debt arising from–
>>
>>> (i) any violation of the Federal securities laws (as
>>> defined in section 3(a)(47) of the Securities
>>> Exchange Act of 1934), any State securities laws, or
>>> any regulation or order issued under Federal
>>> securities laws or State securities laws;
>>>
>>> (ii) fraud, deceit, or manipulation in a fiduciary
>>> capacity or in connection with the purchase or sale of
>>> any security registered under section 12 or 15(d) of
>>> the Securities Exchange Act of 1934 or under section
>>> 6 of the Securities Act of 1933;
>>>
>>> (iii) any civil remedy under section 1964 of title 18;
>>> or
>>>
>>> (iv) any criminal act, intentional tort, or willful or
>>> reckless misconduct that caused serious physical
>>> injury or death to another individual in the preceding
>>> 5 years.

11 U.S.C. § 522(q)(1) (emphasis added).

To try to simplify this complex provision, the basic premise is that a debtor will not

receive a discharge if (1) the debtor is subject to section 552(q)(1), meaning the debtor has

elected state or local exemptions ***and*** (2) the debtor has (a) been convicted of a felony that

indicates her bankruptcy filing is abusive, (b) violated certain securities laws, or (c) engaged in

criminal, intentional, or reckless misconduct that lead to serious physical injury or death of

another person within five (5) years preceding the petition.  *See In re Jacobs*, 342 B.R. 114, 115-16 (Bankr. D.D.C. 2006).

## III. <u>DISCUSSION</u>

A.  <u>Section 727(a)(2)(A)</u>

The Plaintiffs carry the burden of proof to deny a discharge under section 727(a)(2)(A). To meet this burden, they must prove four elements:  (1) the property "transferred, removed, destroyed, mutilated, or concealed" was "property of the debtor," and (2) the debtor committed one of these five "improper act[s]" within (3) one year of filing and (4) with "a subjective intent to hinder, delay, or defraud a creditor." *Ng v. Adler (In re Adler)*, 494 B.R. 43, 62 (Bankr. E.D.N.Y. 2013), *aff'd*, 518 B.R. 228 (E.D.N.Y. 2014) (citing *In re Boyer*, 328 Fed. App'x. at 714).

Intent to defraud is proven through either (1) direct or explicit proof, or (2) a preponderance of circumstantial evidence of a debtor's illicit intent.  *In re Boyer*, 328 Fed. App'x. at 714.  Circumstantial evidence of fraudulent intent is often proven through "badges of fraud," which in the 727(a)(2)(A) analysis are:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry.

*Gordon v. Tese-Milner (In re Gordon)*, 535 B.R. 531, 536 (S.D.N.Y. 2015).  Courts have also considered two additional badges of fraud, namely a questionable transfer not in the usual course

15

of business and the secrecy, haste, or unusualness of the transaction.  *See, e.g.*, *Meghji v. Castel (In re Celsius Network LLC)*, 669 B.R. 108, 119 (Bankr. S.D.N.Y 2025) (citing eight "customary badges of fraud" in attempting to prove fraudulent intent).  Plaintiffs raise two claims under 727(a)(2)(A): that the Debtor improperly transferred within one year of filing the petition (i) personal funds to her brother Manish Grover and (ii) personal funds to pay the deposit on the Co-op.

    1.    The Debtor Transferred Personal Funds

    The Debtor disputes that either of the payments were transfers of *personal* funds, alleging that both transfers were of ASMG money on behalf of ASMG.  The Debtor claims that the Manish Grover Payment was used to pay India-based contractors working on behalf of ASMG. The contractors would accept a slight pay reduction if the payment was made in cash and Manish Grover was in India facilitating the payments.  (Trial Recording at 1:24:59.)  As for the deposit on the Co-op, the Debtor claims that it was a partial repayment of the $400,000 owed by ASMG to Manish Shah on account of the Promissory Notes.  But the payment was made by the Debtor by wire transfer drawn on the Chase Account.  (*See* Ex. PX6.)  The Debtor testified at trial that the payment was made by ASMG using ASMG funds directly to Chaves Perlowitz at Manish Shah's direction, *not* made by the Debtor personally.  (Trial Recording at 3:06:50.)  Yet, beyond this testimony, the Debtor fails to provide any evidence as to how these funds were ASMG funds and not property of the debtor.

    The monies held in her *personal* account are presumed to be the property of the Debtor. *See LFD Operating, Inc. v. Aames Dep't. Stores (In re Ames Dep't Stores, Inc.)*, 274 B.R. 600, 617 (Bankr. S.D.N.Y. 2002), *aff'd*, 2004 WL 1948754 (S.D.N.Y. Sept. 1, 2004), *aff'd*, 144 F. App'x 900 (2d Cir. 2005) ("As a general rule, once funds are deposited in a bank account, the

account holder is presumed to have title to and control over those funds"). New York State law carries this presumption to deposits in joint accounts—they are presumed to be jointly owned by both tenants to the account. *DeFlora Lake Dev. Assocs., Inc. v. Hyde Park (In re Deflora Lake Dev. Assocs., Inc.)*, 628 B.R. 189, 200 (Bankr. S.D.N.Y 2021) ("New York Banking Law § 675(b) states that the making of a deposit into a joint bank account shall constitute 'prima facie evidence . . . of the intention of both depositors or shareholders to create a joint tenancy and to vest title to such deposit or shares, and additions and accruals thereon, in such survivor.'"). The burden is on the Debtor to rebut the presumption. The Chase Account was a joint account of the Debtor and her daughter, Ashna Shah-Grover, not of ASMG. The Debtor did not provide persuasive evidence that the funds belonged to ASMG.

With respect to the Manish Grover Payment, the Debtor would like the Court to believe that the funds were to pay contractors located in India, but she failed to provide the names of the contractors, any detail on the work that they did for ASMG (other than general "data analytics" and "software work"), and any contemporaneous documents regarding the completed work. (Trial Recording at 1:24:10.) All we have is her word which the Court does not credit.

The same goes for the deposit for the Co-op. There is no contemporaneous documentation indicating that the deposit was made at Manish Shah's behest to repay a portion of the loan (which likely would have been an avoidable preference (*see supra*, n.3)). Rather, the record reflects the opposite; the Debtor used personal funds in making the payment. The Debtor's Chase Bank Statement from August 25, 2022 to September 27, 2022 shows a $95,000 wire transfer from the Debtor to Chaves Perlowitz on August 30, 2022. (Ex. PX6.) As of August 25, five days before the wire, the Chase Account held $50,017.96. (*Id.*) Only after the $45,000 Settlement Payment was received by the Debtor on August 26, 2022 (*id.*) did the Debtor have

enough funds in the account to pay the deposit for the Co-op. The usage of the funds from the Settlement Agreement to make the deposit means the Debtor used at least some of her personal funds as a deposit, even if the Court credited the Debtor's testimony that the funds really belonged to ASMG.

Moreover, personal funds are property of the estate. It is well settled that deposits in a bank account belonging to the Debtor are presumptively considered property of the estate. *McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 47, 70 (Bankr. S.D.N.Y. 2010); *Buckeye Check Cashing, Inc. v. Meadows (In re Meadows)*, 396 B.R. 485, 491 (B.A.P. 6th Cir. 2008); 4 COLLIER ON BANKRUPTCY ¶ 541.09 (15th ed. 2009) ("[D]eposits in the debtor's bank account become property of the estate under section 541(a)(1)"). "This presumption holds even in cases where the account contains commingled funds." *FBI Wind Down Inc. v. All American Poly Corp (In re FBI Wind Down, Inc.)*, 581 B.R. 116, 130 (Bankr. D. Del. 2018).

The Debtor has failed to provide evidence that these funds were not used as her personal funds and related solely to that of ASMG. Accordingly, the Debtor has failed to overcome the presumption that the funds were property of the estate.

## 2. The Transfers Occurred Within One Year of the Filing of the Petition.

It is undisputed that these transfers occurred within one year prior to the Debtor filing the Petition on December 31, 2022. (PTO at 7.)

18

3.   The Debtor Possessed the Requisite Intent

a.   The Manish Grover Payment

The final issue is whether the Debtor had intent to hinder, delay, or defraud creditors with these transfers.  The Debtor in her testimony denied any intent to defraud for each of the transactions, so the Court must consider if the Debtor's actions implicate any of the badges of fraud to determine if there is sufficient circumstantial evidence of the Debtor's illicit intent.

The Manish Grover payment implicates four badges of fraud.  *First*, the Debtor has failed to show that she received adequate consideration for the payment.  The Debtor testified that the money was used to pay independent contractors located in India for work completed for ASMG. However, the Debtor has failed to provide the names of the contractors, any detail on their work (other than general "data analytics" and "software work"), and any contemporaneous documents regarding the completed work.  (Trial Recording at 1:24:10.)  Again, all we have is her word that this payment was in exchange for work completed for ASMG, which the Court does not credit. *Second*, the payment was made by the Debtor to her brother, implicating the second badge of fraud of a close relationship between the parties.  The parties are so close that the Debtor testified to personally endorsing and depositing the check into Manish Grover's account on his behalf. (*Id.* at 1:23:08.)  *Third*, this transfer does not appear to be in the usual course of business for ASMG.  The Debtor has testified that this payment to her brother was reimbursement for payments he made to ASMG contractors located in India, as it was cheaper for her to pay them in cash.  The record reflects that this was the *sole* instance of the Debtor making such a payment to Manish Grover or any individuals in India, raising questions as to why only in this case was payment made in such a manner.  *Fourth*, the secrecy, haste, and unusualness of the transaction are cause for additional concern.  The check, made out to Manish Grover, does not indicate

anywhere that it is intended for ultimate payment to ASMG contractors—the "Memo" line is left blank.  (Ex. PX5.)  Additionally, the Debtor was in such haste to get this money to Manish Grover that she signed and deposited the check into his CitiBank account herself.

Finding multiple badges of fraud, the Court concludes that there is sufficient circumstantial evidence to show that the Debtor had the requisite intent to defraud in making the Manish Grover Payment.  *In re Celsius Network LLC*, 669 B.R. at 120; *see also O'Connor v. DL-DW Holdings, LLC (In re Extended Stay, Inc.)*, 2020 WL 10762310, at *89 (Bankr. S.D.N.Y. 2020) (collecting cases finding four to five badges of fraud sufficient to constitute "clear and convincing evidence of actual intent").

#### b.  The $95,000 Payment for the Deposit for the Purchase of the Co-op

Likewise, the Plaintiffs have demonstrated sufficient circumstantial evidence of the Debtor's intent to hinder, delay, or defraud with respect to the payment of the $95,000 deposit for the purchase of the Co-op.  *First*, the Debtor has been able to enjoy the benefits of the Co-op. While the Debtor did not ultimately receive a mortgage for the property, the Debtor's husband Manish Shah did and took control of the property.  The $95,000 deposit from the Debtor's Chase Account reduced the amount that Manish Shah had to pay at the closing.  The Debtor testified to staying in the Co-op.  (Trial Recording at 3:11:35.)  *Second,* as noted above, the transaction lacks many of the formalities that one would expect from a repayment on promissory notes payable to Manish Shah.  The Debtor testified that these formalities were not necessary as ASMG was making this repayment to her husband, yet the Debtor and Manish Shah *did* exercise such formalities when coming to the loan agreements as shown by the two written and signed promissory notes.  (Exs. PX2, PX3).  When making this alleged repayment as principal of ASMG in a manner that is likely outside of the ordinary course of business, the Debtor failed to

obtain written evidence that Manish Shah directed the payment and failed to obtain written

evidence indicating that Manish Shah accepted the $95,000 as partial repayment of the loan.  The

payment for the alleged benefit of her husband Manish Shah was made shortly before the Debtor

filed her Chapter 7 petition at a time she appears to have been insolvent.  Beyond what the

Debtor testified at trial saying that the $95,000 was a business expense, there is *nothing* in the

record to suggest it was.[4]

Moreover, the Debtor's failure to disclose the transaction further indicates it was made in

secrecy.  The deposit, even if paid on account of the Promissory Notes, would likely have been a

preferential payment to an insider, as the Promissory Notes were unsecured notes and the Debtor

was facing a claim of James Busche of over $2.6 million based on a New York state court

judgment.  Accordingly, this payment would likely have been avoidable under 11 U.S.C. § 547

as a preferential transfer to an insider of the Debtor.  If the Court determined that the payment

was not made on account of the Promissory Notes and the Debtor did not receive any

consideration in return, then the payment would still be voidable as a fraudulent transfer under

the New York Uniform Voidable Transactions Act as the transfer lacked reasonably equivalent

value.  N.Y. Debt. & Cred. Law § 273 (McKinney).  The Debtor's arguments all fail to account

for her lack of disclosure of the Co-op deposit, even if the Court considers the transfer in the

light most favorable to the Debtor.

---

[4]     The Trustee sought to take the depositions of Manish Shah, Manish Grover and Ashna Shah-Grover, after
serving them with subpoenas duces tecum.  Each failed to appear for their depositions or otherwise produce
documents.  The Debtor and the Plaintiffs stipulated that the three witnesses were precluded from testifying at trial
and any documents which were not produced by the witnesses were precluded from being used as evidence at trial.
*See* Stipulation and Order Precluding (i) the Testimony of Manish Shah, Manish Grover, and Ashna Shah-Grover
and (ii) Any Documents Not Provided in Response to Plaintiffs' Consolidated Document Demands, Case No. 22-
11730, ECF Doc. # 93 (June 10, 2024).

Ultimately both payments suggest illicit intent on behalf of the Debtor. The Debtor's discharge is **DENIED** under section 727(a)(2)(A).

B. Section 727(a)(3)

A denial of discharge under Section 727(a)(3) requires proof of (1) failure by the debtor to keep or preserve any recorded information, including books, documents, records and papers, *or* (2) an act of destruction, mutilation, falsification or concealment of any recorded information including books, documents, records and papers by the debtor or someone acting for the debtor (3) *and* that by failing to keep such books or records, or by destroying or concealing such records, it is impossible to ascertain the financial condition and material business transactions of the debtor. *In re Gardner*, 384 B.R. at 665. Courts recognize a shifting burden of production under section 727(a)(3). *Id.* Once the Trustee has demonstrated that the records are insufficient to ascertain the debtor's financial condition and business transactions, then the burden of production shifts to the debtor to produce additional credible evidence to rebut the proof of insufficient records or to justify the absence of records. *Id.*

There is no intent requirement; only a showing that the debtor failed to keep records that a reasonable person would maintain is necessary. *Id.* Whether a failure, total or partial, will be justifiable is a question of fact to be determined by the totality of the circumstances. *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992). The Court's inquiry into justification focuses on the education, experience, and sophistication of the debtor, the volume of the debtor's business, the complexity of the debtor's business, and the amount of credit extended to debtor in her business. *In re Cacioli*, 463 F.3d at 237.

Here, the Debtor—a sophisticated individual with two master's degrees—provided the Trustee with a falsified bank statement. The Debtor intentionally (i) changed the font of the

Chase Bank Statement; (ii) increased the ending balance by $30,000; (iii) changed the deposit

dates for the Infosys Limited payments from December 30, 2022 (pre-petition) to January 3,

2023 (post-petition); and (iv) reduced the amount of check no. 3640 dated January 12, 2023 from

$40,000 to $10,000. (Exs. PX21, PX13.)  However, the Trustee has not met his burden of proof

to show that the falsification of the bank statement made it impossible to ascertain the financial

condition and material business transactions of the Debtor.

The Debtor provided the correct Chase Bank Statement on April 23, 2023, after the

Trustee served a Rule 2004 document request on Chase.  (PTO at 6.)  The Trustee noted that the

Debtor provided the Chase Bank Statement ten days after the Trustee had subpoenaed the Chase

Account.  (Trial Recording at 0:38:55.)  Even if the Debtor had not provided the correct bank

statement, the Trustee would have received it from Chase, indicating there was no

"impossibility" to the Trustee's ability to ascertain the financial condition and material business

transactions of the debtor.  The Debtor's duplicity may not be enough to deny a discharge on this

count of the Complaint, but it figures into the Court's overall assessment of her credibility which

was clearly lacking.  Because the Trustee has not met the initial burden of proof, the Court will

not determine whether the failure is substantially justified considering the Debtor's multiple

master's degrees and experience in the IT business.  Discharge is **NOT DENIED** under section

727(a)(3).

C.  Section 727(a)(4)(A)

Section 727(a)(4)(A) denies discharge if a debtor "knowingly and fraudulently, in or in

connection with the case . . . made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  To show

cause under this subsection, five elements must be proven: (1) the debtor made a statement under

oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor

made the statement with fraudulent intent; and (5) the statement related materially to the

23

bankruptcy case. *In re Boyer*, 328 Fed. App'x. at 715 (citations omitted). Under section

727(a)(4)(A), a debtor's petition and annexed schedules constitute a "statement under oath," for

purpose of "false oath" discharge exception. *Forrest v. Bressler (In re Bressler)*, 387 B.R. 446,

460 (Bankr. S.D.N.Y. 2008). Omissions, as well as affirmative misstatements, can qualify as

"false oaths," within meaning of discharge exception. *Id.*

For purposes of denying discharge, fraudulent intent may be inferred from series of

incorrect statements contained in bankruptcy schedules. *Castillo v. Casado (In re Casado)*, 187

B.R. 446, 450 (Bankr. E.D.N.Y. 1995) (denying discharge when the debtor falsely listed accounts

receivable, failed to list household goods and furnishings of value, and failed to list several

lawsuits pending against him).

The rationale for denying discharge based on incorrect Schedules is as follows:

> Successful administration of the Bankruptcy Act hangs heavily on the
> veracity of statements made by the Bankrupt . . . . Statements called for in
> the Schedules . . . must be regarded as serious business; reckless
> indifference to the truth . . . is the equivalent of fraud.

*In re Diorio*, 407 F.2d 1330, 1331 (2d Cir. 1969).

A statement or omission is material if it is "related to the debtor's business transactions,

concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's

property." *In re Gardner*, 384 B.R. at 667.

The Trustee alleges that the Debtor made the following false statements or

omissions in connection with her bankruptcy case:

1. The Debtor failed to disclose her loan obligations to Manish Shah and/or
   Diamond Deal, totaling approximately $300,000, on Schedule E/F or Amended
   Schedule E/F.
2. The Debtor failed to disclose her 2022 income in response to SOFA question 4.
3. The Debtor failed to disclose a $45,000 payment that she received from
   Bradshaw Law Group in response to SOFA question 5.
4. The Debtor failed to disclose a $20,000 payment to her brother, Manish Grover,
   in response to SOFA question 7.

5. The Debtor failed to disclose a $95,000 payment allegedly made on behalf of Manish Shah and/or Diamond Deal in response to SOFA question 7.
6. The Debtor listed an incorrect address for Grover Partners on Schedule H.
7. The Debtor listed an incorrect address for ASMG on Schedule I.

(PTO at 20-21.)

The Debtor provides several unconvincing explanations to counter that she knew of each statement's falsity. For instance, the Debtor claims that the Co-op deposit, as a payment made from ASMG funds for ASMG, did not need to be disclosed. (Trial Recording at 3:17:45.) However, this rationale fails because the Debtor had a legal right in the Co-op contract (*i.e.,* intangible property), which became property of the estate under section 541(a)(1) and a debtor must disclose all property of the estate. *Banner v. Bagen* (*In re Bagen*), 186 B.R. 824, 828 (Bankr. S.D.N.Y. 1995), *aff'd,* 201 B.R. 642 (S.D.N.Y. 1996) ("Congress intended property of the estate to include all interests of a debtor, including a debtor's contract right to future, contingent property"). Because of the mortgage contingency in the contract, and Debtor's trial testimony admission that she could not obtain a mortgage because of her bankruptcy, had the contract and the deposit been disclosed, the Trustee would likely have been able to recover the $95,000 deposit. The Debtor additionally asserts that she did not provide her 2022 income at the time of filing because she did not know it "down to the penny." (Trial Recording at 1:32:10.) While this might excuse a somewhat incorrect estimate, it does not excuse the failure to provide *any* income.

The Debtor claims that she did not think that the Settlement Payment was income because the funds were primarily used to pay her legal costs and relocation expenses. (PTO at 35-37.) This rationale is similarly unconvincing, as the Debtor is still required to disclose the payment. The Debtor additionally argues that she received only half of the payment because the other half belonged to her daughter. However, the payment was made into their joint account,

25

meaning the entirety of the Settlement Payment is presumptively property of the Debtor and therefore part of the bankruptcy estate.  N.Y. Banking Law § 675(b).  Moreover, even if the Debtor only had an interest in half the Settlement Payment, that is not an excuse for the failure to disclose its existence.

Taken together, the Court infers fraudulent intent from the false statements and omissions.  The false statements and omissions are material, as they relate to Debtor's business transactions, concern the discovery of assets, business dealings, and/or the existence or disposition of the Debtor's property.  As such, the elements of section 727(a)(4)(A) are met and discharge is **DENIED**.

D.  Section 727(a)(4)(D)

Courts have interpreted section 727(a)(4)(D) as imposing an affirmative duty on the Debtor to cooperate with the trustee "by providing all requested documents to the trustee for his review, and failure to do so constitutes grounds for denial of discharge."  *In re Gardner*, 384 B.R. at 668, (citing *Thaler v. Erdheim (In re Erdheim)*, 197 B.R. 23, 28 (Bankr. E.D.N.Y. 1996)).  The circumstantial evidence supporting the requisite intent to act "knowingly and fraudulently" was found to exist in other cases when the debtor's conduct was evasive or persistently uncooperative.  *In re Gardner*, 384 B.R. at 668 (citing *Pereira v. Young (In re Young)*, 346 B.R. 597, 615 (Bankr. E.D.N.Y. 2006)).

Section 727(a)(4)(D) largely follows the same analysis as above because the statements and omissions were made to the Trustee.  Under section 727(a)(4)(D), discharge is **DENIED**.

E.  Section 727(a)(12)

Pandarinathan additionally alleged that the Debtor's discharge should be denied pursuant to section 727(a)(12).  The Court **OVERRULES** Pandarinathan's objection for two reasons.

26

First, section 727(a)(12) is inapplicable because it applies only to debtors who have elected state or local exemptions. *In re Jacobs*, 342 B.R. at 115. The Debtor has elected federal exemptions. (*See* Amended Schedules, Case No. 22-11730, ECF Doc. # 9 at 8 (stating that the Debtor elected federal exemptions pursuant to 11 U.S.C. § 522(b)(2)).) Accordingly, section 522(q)(1) is inapplicable as the Debtor has not elected to exempt property under state or local law pursuant to section 522(b)(3)(A). 11 U.S.C. § 522(q)(1).

Second, Pandarinathan fails to properly object pursuant to section 727(a)(12). Pandarinathan requests that a discharge be denied pursuant to section 727(a)(12)(A) alone, but section 727(a)(12) is not disjunctive. (*See* Pandarinathan Complaint at 28.) Section 727(a)(12) requires that both (A) and (B) are satisfied with the relevant portion stating "(A) section 522(q)(1) may be applicable to the debtor; ***and*** . . . (B) there is pending any proceeding in which the debtor may be found guilty of a felony . . . ." Although having already determined that subsection (A) has not been satisfied, it should also be noted that subsection (B) has also not been satisfied. Pandarinathan has not put forth evidence indicating that the Debtor is subject to any criminal proceeding described in section 727(a)(12)(B) or any section referenced therein. The Court is unaware of any conviction for a felony indicating that the Debtor's bankruptcy filing is abusive, a proceeding to find that the Debtor violated certain securities laws, or engaged in criminal, intentional, or reckless misconduct that led to serious physical injury or death of another person within five (5) years preceding the petition.

Therefore, the Court **OVERRULES** Pandarinathan's objection to discharge pursuant to section 727(a)(12)

## IV. <u>CONCLUSION</u>

For the reasons explained above, the Court **DENIES** the Debtor a discharge under 11

U.S.C. §§ 727(a)(2)(A), 727(a)(4)(A) and 727(a)(4)(D); the Court declines to deny a discharge

under §§ 727(a)(3) and 727(a)(12).

**IT IS SO ORDERED.**

Dated:    November 18, 2025
          New York, New York

*Martin Glenn*

MARTIN GLENN
Chief United States Bankruptcy Judge